# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

```
UNITED STATES OF AMERICA,    ) Case No. 2:24-cr-00003-1,2,3,4,5
                             )
                Plaintiff,   )
                             )
v.                           ) Via Video Conference
                             ) U.S. Courthouse
MIKAL McCRACKEN, et al.,     ) 601 Market Street
                             ) Philadelphia, PA 19106
                             )
                             ) November 21, 2024
                Defendants.  ) 3:33 p.m.
```

## TRANSCRIPT OF VIDEO STATUS CONFERENCE
### BEFORE HONORABLE JOHN F. MURPHY
### UNITED STATES DISTRICT COURT JUDGE

APPEARANCES VIA VIDEO:

For the Plaintiff:          U.S. Attorney's Office
                            By:  KATHERINE SHULMAN, ESQ.
                                 JOSEPH A. LaBAR, ESQ.
                            615 Chestnut Street
                            Suite 1250
                            Philadelphia, PA 19106-4476

For the Defendant,          MARK S. GREENBERG, ESQ.
Mikal McCracken:            651 E. Township Line Road
                            Number 81
                            Blue Bell, PA 19422

For the Defendant,          Law Office of
Aleem Abdul-Hakim:          Alan J. Tauber, P.C.
                            By:  ALAN J. TAUBER, ESQ.
                            718 Arch Street
                            Suite 702N
                            Philadelphia, PA 19106

For the Defendant,          MARTIN I. ISENBERG, ESQ.
Dean Fosque:               Two Penn Center Plaza, Suite 1040
                            Philadelphia, PA 19102

```
APPEARANCES VIA VIDEO:

For the Defendant,              Kenny Burns & McGill
Amin Muse:                      By:  THOMAS D. KENNY, ESQ.
                                1500 John F. Kennedy Boulevard
                                Two Penn Center, Suite 520
                                Philadelphia, PA 19102


For the Defendant, Kavon        Saxton & Stump
Coleman:                        By:  TERRI A. PAWELSKI, ESQ.
                                123 South Broad Street
                                Suite 2800
                                Philadelphia, PA 19109
```

```
ESR Operator:                   Kenny Duvak

Deputy Clerk:                   Kerri Christy

TRANSCRIPTION SERVICE:          TRANSCRIPTS PLUS, INC.
                                435 Riverview Circle
                                New Hope, Pennsylvania 18938
                                215-862-1115
                                CourtTranscripts@aol.com
```

```
 Proceedings recorded by electronic sound recording, transcript
                Produced by transcription service.
```

1            THE COURT:  So let me just call the caption.  This is

2   24-cr-3 United States of America versus McCracken.  Let's have

3   introductions, please, starting with the Government.

4            MR. LaBAR:  Good afternoon, Your Honor.  For the

5   United States, Joseph LaBar.  I'm joined by AUSA Shulman.

6            Agents, could you introduce yourselves for the

7   record?

8            SPECIAL AGENT YEAGER:  FBI Special Agent Matt Yeager,

9   Your Honor.

10            SPECIAL AGENT ROCHE:  And Special Agent Brandon

11   Roche.

12            THE COURT:  Okay.

13            MR. GREENBERG:  Your Honor, my name is Mark

14   Greenberg.  I'm counsel for Mikal McCracken.

15            MR. KENNY:  Good afternoon, sir.  Tom Kenny for Mr.

16   Muse.

17            MR. TAUBER:  Your Honor, Alan Tauber for Aleem Abdul-

18   Hakim.

19            MS. PAWELSKI:  And this is Terri Pawelski for Kavon

20   Coleman.

21            THE COURT:  Okay.  I don't think we have 100 percent

22   attendance, am I -- is that correct?

23            MR. GREENBERG:  I think you're right, Judge.  I think

24   we're missing Mr. Reynolds and Mr. Isenberg.

25            THE COURT:  Okay.

1          MR. GREENBERG:  And Mr. Edelin.

2          THE COURT:  Is it okay -- I mean, does anyone think

3  we shouldn't proceed?  Or do you think we should have the

4  catch-up -- the best catch-up we can?  What do you think?

5          MR. LaBAR:  I -- Judge, I'm content to move forward.

6  You know, we're not going to say anything we can't repeat to

7  them.

8          THE COURT:  Okay.  Okay.  All right.  Well, this is

9  being transcribed, and I don't anticipate making any -- I mean,

10  maybe you'll surprise me, but I don't anticipate making any

11  decisions.  This is just a status update, so --

12          MR. KENNY:  Judge, you're not going to entertain any

13  motions to dismiss the indictment orally right now?

14          THE COURT:  I will certainly -- I will entertain

15  anything you'd like to do.  I'm only telling you what I'm going

16  to do --

17          MR. KENNY:  Understood.

18          THE COURT:  -- which is I don't think make any

19  rulings.

20          MR. KENNY:  Yes, sir.  I'm just -- just making light

21  jokes.

22          UNIDENTIFIED ATTORNEY:  Hope springs eternal, Mr.

23  Kenny.

24          MR. KENNY:  Yes.  Yes, it does.

25          THE COURT:  I note that Mr. Isenberg has just joined

1  the call.

2       MR. ISENBERG:  Thank you, Judge.  Good -- good

3  afternoon, Judge.

4       THE COURT:  Good afternoon.

5       Mr. Isenberg, I was just saying, we don't have 100

6  percent attendance, even with you on the line.  But this is

7  just a status call, so I think I'm going to go ahead and

8  proceed since we have -- at least we have a quorum, and I can -

9  - I can just -- at least I can learn some things that might be

10 helpful.

11      MR. ISENBERG:  Understood, Judge.

12      THE COURT:  One thing I wanted to -- I guess I'll --

13 it was just on my mind, so I'll just touch on it, is I know on

14 the docket, there's two motions filed by Mr. Greenberg on

15 behalf of Mr. McCracken, and I have a response from the

16 Government.

17      I am -- I'm considering that, the motions and the

18 response.  I thought I would give -- since Mr. Greenberg read -

19 - I'm sure has looked at the opposition, I thought I would give

20 Mr. Greenberg -- I don't want to have a full oral argument

21 necessarily, but I did want to give Mr. Greenberg the

22 opportunity to just comment on the part -- not so much the

23 substance of it, but more the side of the timing of the

24 decision.

25      Give me some guidance from your point of view about

1  your goals with the motion, and why an early decision would be

2  more helpful than unhelpful.  Because sometimes deciding

3  something too early is unhelpful because then you have to --

4  you learn more and you have to undo it.

5            So why don't you go ahead?

6            MR. GREENBERG:  Thank you, Your Honor.

7            We do not need an early decision.  I just wanted to

8  bring this issue to your attention so we can begin to consider

9  it and have a conversation about it.

10            I think given the magnitude of the cellular

11  information that's going to be introduced in this case, it

12  would be best if we had an orderly process to talk about how

13  that information is admissible, who it's attributable to, and

14  under what hearsay exception or non-hearsay admission the

15  evidence is admitted.

16            There is no reason to do this in the next month, but

17  I think we ought to begin a process whereby the Government

18  identifies the text messages, the photographs, the respective

19  device that is going to be used to introduce that information

20  so counsel can look at it and decide whether or not he or she

21  is going to challenge that evidence or not.  I just gave that

22  case to the Court because, in that case, the district court

23  judge came up with an orderly process by requesting the

24  Government to identify the information it wanted to introduce

25  so that counsel could then respond in a methodical way.

1          I understand the discovery is not all completed.  I

2    don't think that this process should really begin until all the

3    discovery is completed.  But, I mean, I think as a practical

4    matter, you're going to want to be able to consider all this

5    information, Your Honor, in an orderly way.  Counsel's going to

6    want to be able to respond in an orderly way.  And then if the

7    Court makes certain decisions that counsel disagrees with, we

8    go to trial, and for some reason the defendants lose, then the

9    appellate court has a record on which to make rulings on the

10   Court's decisions.

11         THE COURT:  It's hard to -- it's hard to disagree

12   with it the way that you explained it.  But what -- in thinking

13   about maybe getting serious about giving guidance on this

14   around the time that discovery is essentially complete, does

15   anyone have thoughts on when that might be?  If you could

16   bracket that time frame.

17         MR. LaBAR:  Well, Judge, under Your Honor's order, I

18   believe we are -- we're headed towards December 10th for

19   routine discovery, and then the 25th of February for all

20   remaining expert reports.  So, certainly by the 25th of

21   February, everything -- everything's going to be in by that

22   point.

23         THE COURT:  Okay.  I give discovery orders all the

24   time, but it's not always -- sometimes it's aspirational, so

25   that's why I asked.

1                         (Laughter)

2              THE COURT:  That's -- okay.  Well, that's pretty

3    promising.

4              So, what would be the reaction of the group?  Because

5    I think -- I take the motion seriously, and I thought Mr.

6    Greenberg was persuasive the way he explained it.

7              What about we'll just keep tabs on this issue, and we

8    can discuss it again the next time we get together?  You know,

9    the Government has had a chance to read the motions, as well,

10   and has responded, and has heard what Mr. Greenberg said right

11   here.

12             So, I don't know, maybe there's something -- maybe

13   there's something that everyone could work on together.  Either

14   way, I'm thinking what makes sense to do is keep this on the

15   side burner, and we'll come back to it next time we talk.

16             MR. LaBAR:  Yes, Your Honor.

17             THE COURT:  Okay.  All right, well, that was the only

18   thing you had flagged for my attention on the docket, but I

19   will -- I'm happy to open the floor for anyone who wants to

20   bring anything up.  Also to update me, that was -- I just got

21   an update on discovery, but if you want to update me on your

22   thoughts on overall progress.  The -- I ask, in part, for my

23   own sake because the trial in this case is a significant dent

24   on my schedule whenever it happens, and I'll obviously need to

25   clear out -- you know, it will -- it's logistically serious for

1  me, and so I want to try to have some -- have some certainty as

2  to when that's going to be.  I'm sure everybody does, but I

3  definitely need to.

4          MR. GREENBERG:  Judge, may I touch on that, please?

5          THE COURT:  Yeah.

6          MR. GREENBERG:  So, I'd like to talk about the

7  disclosure of the CAST report, and that was alluded to by the

8  Government in its answer to my motions.

9          The Court's scheduling order basically leaves a

10  window of about 10 weeks between the date that the expert

11  reports are disclosed and the trial date.  So, in our situation

12  right now, the expert report is due on February 25, and the

13  trial date is May 5, so that's about a period of 10 weeks.

14          Counsel and I had a meeting with our forensic

15  examiner, Cornerstone Discovery, and they told us that it's

16  going to take them about six months between the time that the

17  CAST report is disclosed and the time that they can finish

18  their examination of that CAST report; it's going to take six

19  months.

20          They also said it might take an additional two months

21  if they're going to need to generate a report of their own.

22          I tell you that, Your Honor, because, one, I think

23  it's going to postpone the May trial date.  And, two, I would

24  ask that the Court make an exception with respect to the CAST

25  report as to the time frame within which the CAST report should

1 | be supplied to counsel, only because we want to get it to
2 | Cornerstone Discovery as soon as we can.

3 | So, if, for example, the CAST report could be
4 | supplied to us, let's say hypothetically, on January the 1st,
5 | then we could then figure six months from there, or maybe eight
6 | months, if we need to generate a report in response to the CAST
7 | report.  That way we can have a postponement as short as
8 | possible.

9 | I am very mindful of the fact that my client has been
10 | in jail going on three years, not only for the federal custody,
11 | but also for the state custody in connection with this
12 | prosecution.

13 | I have talked to him about this potential delay.  I
14 | have explained to him the pros and the cons of disclosing this
15 | report.  And he is prepared to have the report generated in
16 | such a way that his investigation is done completely.

17 | So, with respect to the CAST report at least, I would
18 | ask the Court to consider allowing that to be disclosed sooner
19 | rather than later.  We want to avoid a situation where
20 | Cornerstone has to duplicate work that is done by the CAST
21 | folks themselves.  Because if we require our expert to
22 | duplicate the CAST report work, then that is going to eliminate
23 | other avenues of investigation that our expert is using -- is
24 | performing in connection with representation of these young
25 | men.

1        So, I do not see a downside to the Government.
2   Frankly, I do not think it is going to be prejudicial to them.
3   The report speaks for itself.  It's just really a function of
4   when that report is disclosed.
5        MR. LaBAR:  Does the Government -- does Your Honor
6   wish a response right now from the Government?
7        THE COURT:  Well, I guess my question was, Mr.
8   Greenberg's argument appears to assume that the report is
9   ready, or it could be ready soon.  But a report that takes six
10  months to respond to sounds complicated.
11       MR. LaBAR:  You kind of read my mind, Judge.  And I
12  was actually going to point out the fact that the language --
13  and I do not think it was intentional by Mr. Greenberg, but the
14  language "the report" implies its immediate existence, which is
15  not the case.
16       We've actually been talking to and meeting with the
17  expert who was preparing that report.  He literally needs
18  every second that Your Honor's scheduling order has given us,
19  and I think I maybe even mention that in my pleadings to Your
20  Honor.
21       The -- and that's exactly the point.  If it takes six
22  months for their CAST expert to do anything, then Your Honor
23  can certainly imagine how long it would take the Government's
24  expert.  But I do not know what the defense expert necessarily
25  anticipates doing.  I do know what they already have, just in

1  terms of being ready.

2          So, there are two different things I would like to

3  touch upon.  The first is stuff that I have found very

4  educational and very fascinating in this case.  I've not really

5  delved into this as deeply on other cases as I've learned in

6  this case.  And I learned that I was disabused of the notion

7  that a CAST report, which is something that in other very small

8  cases has simply appeared on my desk as if by magic, is a

9  simple matter of feeding data into a large computer, or a small

10 one, I don't know, and a report comes out the other end.  I've

11 learned that that's not the case at all.

12          What happens is, I believe on a national basis,

13 there's somewhere in the neighborhood of 80 FBI employees that

14 do this work.  We're fortunate enough to have one assigned to

15 our case here in the Philadelphia area.  We are not his only

16 case.  He also runs individual cases as an investigator, in

17 addition to being an expert.

18          But in addition to his work load -- and he also has a

19 couple trials brewing.  But in addition to that, he has to go

20 through with a great deal of detail with a great deal of

21 methodical attention to each and every piece of this evidence

22 that, again, my friend Mr. Greenberg says will take his expert

23 six months to review, as well.  The FBI expert occasionally has

24 to actually go out into the field if he is reading a report

25 from a carrier or from some of this data, and I apologize to

1  everybody if I use the wrong term, carrier or data.  The bottom

2  line is if he's looking at something, and as I understand it,

3  if he sees that a report suggests, for instance, that a

4  particular cell tower is tilted in a certain way and covers a

5  certain area, and that doesn't make sense, he literally gets

6  into a car and drives to the cell tower and figures out, with

7  the use of some sort of gadget, what area is actually covered

8  by that.  And so he actually has to go to the street, to a

9  certain -- to a certain extent.

10        He then has to put all of this together.  We estimate

11  that we're going to be looking at something in the neighborhood

12  of 250 pages.  And there are 250 pages, I've only seen a few of

13  them so far, which contain maps, which contain a variety of

14  symbols and legends that allow the viewer of that map to

15  understand exactly where each device was at any given point in

16  time.

17        He then has to take those materials and he has to

18  rely upon the time and work of some of the other 79, I guess

19  since he's one of them -- one of the other 79 or several of the

20  other 79 FBI experts throughout the United States to conduct a

21  peer review.  He will not issue a report until that peer review

22  has been completed.  He wants to make sure he's getting it

23  right.

24        Now, in terms of what the defense already have or

25  has, since I believe it's just one entity, this Cornerstone --

1  well, the company or corporation or whatever.  In terms of what

2  -- pardon me, Judge -- they already have that they can start

3  on, as well, because they can -- they could do a lot of the

4  same work.  And Mr. Greenberg actually did mention just now

5  that should it become necessary for his expert to issue a

6  report, it's necessary.  I think the Court can certainly

7  recognize that if an expert wants to come into the courtroom

8  and testify on behalf of the defense, we're going to insist on

9  our full panoply of discovery, and that includes a report.  But

10 if he wants to make that report, he has to do the same process.

11          And here's what he has to go on so far.  Most

12 recently, actually, as of, I think, today or maybe yesterday,

13 Ms. Shulman, who's been doing tremendous heavy lifting on the

14 discovery in this case, just issued the twelfth tranche of

15 discovery, which includes a lot of information about specific

16 dates, times, and locations for each of the events.

17          In addition to those materials, which allow the

18 defense expert to say, "Okay, what date did this happen?

19 Where, supposedly, was it?"  All of the raw data that's being

20 used and examined in great detail by the Government's CAST

21 expert has also been turned over.

22          Judge, in addition -- and I don't know, we may have

23 mentioned this in one of the other listings, and if I'm

24 repeating myself, I apologize.  We had also provided in

25 discovery, kind of an early Jencks kind of discovery, a very

1  detailed PowerPoint that goes through each of these events that

2  gives kind of, I guess, this kind of road map, and I hesitate

3  to use that term, but it'll work as well as anything does.  An

4  outline and overview of all this, which, again, their expert

5  has the ability to enjoy the work of this agent.

6        And, Judge, in fact, I don't know if I've offered to

7  do this before, but if Your Honor wishes a copy of that

8  PowerPoint, I don't think my colleagues would object.  It might

9  help the Court to kind of better understand and get a -- get

10 your arms around -- around these facts.  We'd be glad to

11 provide that.

12        Ms. Shulman assures me that we, meaning Ms. Shulman,

13 will have the technical ability to load that up on a -- some

14 sort of Internet thing and get it to you.  It would, I think,

15 perhaps help the Court in just evaluating going forward and

16 kind of an understanding -- an understanding what's going on.

17        So, for all of those reasons, we need every minute

18 that the Court's scheduling order has provided to us.

19        We've been working under that order now for ten

20 weeks.  If my recollection serves, I believe Your Honor

21 instituted the order September the 5th.  So, I think we're kind

22 of ten weeks out.  And, again, making progress, and I hesitate

23 to claim that.  Ms. Shulman has done a lot of heavy lifting,

24 and I'm not about the business of stolen valor, but we are

25 doing everything in a diligent and timely fashion.

1          And so, because I believe that the Cornerstone folks

2    have a lot that they can work with and a lot of stuff, they can

3    get a running start.  And because it is -- there's no

4    intransigence on our part, it is just literally impossible for

5    the Government's expert to get this done any faster than

6    February the 25th.  He was less than delighted with me with the

7    date of February 25th, but that's life.

8          And so, that's where we find ourselves.  And, again,

9    we literally couldn't do it even if somehow it was deemed to be

10   an appropriate thing, because it doesn't exist, and it is going

11   to be tight getting it by the 25th of February, but we're going

12   to get that done.

13         So, that -- that is, I guess, my -- I was going to

14   say short, maybe long response to my friend's comments.

15         THE COURT:  I appreciate the explanation.  What is

16   your reaction, Mr. LaBar, to the notion that defendant or

17   defendants will need quite a bit of time to work on the CAST

18   report and prepare a response?

19         MR. LaBAR:  We -- obviously, we're not going to try

20   to oppose that in any way.  I don't know -- again, I don't know

21   how much time they'll need.

22         Again -- and Mr. Greenberg and I are similar in one

23   sense, and that is that both of us are students at this point.

24   He's learning from his expert; I'm learning from mine.  And so,

25   he, I think, has to accept that his expert, if they said they

1  need six months, they need six months.

2      Again, they've got the raw materials.  They've got

3  the same stuff that the Government's expert is using, up to and

4  including the detailed Jencks PowerPoint from the agent.  But

5  if they say they need that time, they need it.  That's fine.

6      THE COURT:  Mr. Greenberg, I'm not inclined to move

7  the February 25 date back, even for this one project.  I

8  appreciate the important interest in making progress towards

9  trial, but given everything I've heard, I'm sympathetic towards

10  everyone needing time to make sure we get this as right as

11  possible.

12      Given that, if I stick with the February 25th, do you

13  already have a sense from your client, or do you know whether

14  that would change your thinking about how much time you would

15  need?

16      MR. GREENBERG:  So, I'm fine with -- so, if the Court

17  is inclined to give us the additional six months for our CAST

18  people to examine the CAST report, and continue on with their

19  task, I'm fine with that, as is Mr. McCracken.

20      In other words, I -- I was only thinking about moving

21  the time up so we didn't extend the trial date that much

22  longer.

23      With that said, I am also sympathetic to Mr. LaBar's

24  situation about the difficulty of his expert getting this done

25  sooner rather than later, which I think supports my CAST

1  person's observations, that it's going to take them six months

2  to examine the report and respond, in addition to doing the

3  other tasks that have been given to them in connection with

4  this defense.

5         THE COURT:  I understand.

6         How does everyone else feel about this situation

7  we've been discussing?

8         MR. KENNY:  Judge, Tom Kenny for Mr. Muse.

9         I see the difficulty.  We have the same -- we're very

10 similar in -- as McCracken.  We were both arrested -- our

11 clients were arrested at the same time, and we've been in the

12 same time.

13        But the only way we can get through this is all of us

14 are students in some way that if it's going to be pushing

15 everything back, we have to.  It's -- for the Government,

16 obviously, they have a vital interest, but we also have our

17 vital interest.  And as far as I'm concerned, we're going to

18 have to push everything back so the parties can do what they're

19 going to have to do, and we're going to rely on Cornerstone.

20 There's no way the individual attorneys could go through this

21 stuff and figure it out without the expert.  There's no way.

22        MR. ISENBERG:  Judge, on behalf of Mr. Fosque, I

23 would agree with what both Mr. Greenberg and what Mr. Kenny

24 said.  I attended the meeting with Cornerstone, and it's a

25 tough job, Judge, that they're going to have to go forward

1  with.  And so I have no objection for the representation of

2  both Mr. Kenny and Mr. Greenberg.

3          MS. PAWELSKI:  I was at the same meeting, and I was

4  told the exact same thing by Cornerstone, Your Honor, and I

5  certainly have to rely on Cornerstone.  I'm horrible with

6  technology to begin with, so --

7          MR. TAUBER:  Your Honor, on behalf of Mr. Abdul-

8  Hakim, (indiscernible - weak signal) you know, is really

9  critical (indiscernible - weak signal) evaluation is that it's

10 critical to any defendant (indiscernible - weak signal).

11 (Indiscernible - weak signal) prepared to -- is prepared to

12 wait.

13         THE COURT:  I got -- you broke up a little bit, but

14 it sounded like agreement to me, yes?

15         MR. TAUBER:  I'm sorry, Your Honor; yes.

16         THE COURT:  Okay.

17         MR. TAUBER:  On behalf of Mr. Abdul-Hakim, we

18 agree.

19         THE COURT:  Okay.  Well -- so, I think, because

20 there's a few moving pieces here, and it's a substantial delay,

21 rather than just drop something on you, I think what I would

22 like you all to do is work on a proposed order for a schedule,

23 and, you know, maybe the exact -- the exact block where the

24 trial lands is something I can help with, too, but at least a

25 framework for the schedule.  Because you may want to put some

1  dates in here for, you know, the response and for a report or

2  so forth, however you want to arrange this.

3       I'll convey to you that I'm sympathetic to what

4  everyone's saying, and I'm open-minded to a substantial

5  extension given the very important concerns that have been

6  voiced here.  But I think it would probably be very helpful for

7  all of you to work together to propose something to me

8  together.  Is that okay?

9       MR. LaBAR:  For the Government, certain.

10      THE COURT:  Sure.

11      MR. GREENBERG:  Yes, Your Honor.

12      MR. ISENBERG:  Yes, Your Honor.

13      THE COURT:  Okay.

14      MR. KENNY:  Of course, Judge.

15      THE COURT:  All right.  Why don't you work on a

16  schedule?  And you can feel free to put some, you know, I -- I

17  kind of have a -- the problem is I have a -- sort of a normal

18  type of schedule, a standard schedule I use for run-ups to a

19  criminal trial, but nothing's normal about this case.  So, you

20  know, just please feel free to use creativity and common sense

21  when coming up with stuff.  You don't have to do something just

22  because you think that's what I want.

23      And see if you can put together a proposed order.  If

24  there's anything you're stuck on, you can indicate that, and I

25  can certainly help with that.  But if you could -- if you could

1  work on that and file it, it would help us -- it would help us,

2  and get us either all of the way or very close to something,

3  and I can get you to the finish line on an order to help us

4  move forward.  Okay?

5          MR. LaBAR:  Yes, Your Honor.

6          MR. GREENBERG:  Very well, Judge.

7          THE COURT:  Okay.  Anything else we need to talk

8  about?

9          MR. LaBAR:  I don't have anything --

10          MR. GREENBERG:  Judge, you froze there for a little

11  bit.

12          THE COURT:  Oh, I just have anything -- anything else

13  we need to talk about?

14          MR. KENNY:  Oh, that's easy enough.  No, Your Honor.

15          MR. TAUBER:  Not from me, Your Honor.

16          MR. GREENBERG:  No, Your Honor, not from Mr.

17  McCracken.

18          MS. PAWELSKI:  No, Your Honor.

19          MR. ISENBERG:  No, Judge.

20          THE COURT:  All right.  Very, very good.  For -- I'm

21  always told to -- especially in big cases like this where

22  there's a lot going on, I'm always told to remind everyone on

23  the defense side to get your invoices properly processed

24  through the system so I can -- I can view and get every -- and

25  keep everything flowing.  You know, it's good to stay on top of

22

1  that, okay?

2            MR. TAUBER:  Yes, sir.

3            MR. GREENBERG:  Yes, Your Honor.

4            MR. KENNY:  Thank you, Judge.

5            MR. ISENBERG:  Thank you, Your Honor.

6            THE COURT:  All right; thanks, everyone.

7            MULTIPLE SPEAKERS:  Thank you, Your Honor.

8            THE COURT:  Bye, now.

9        (Whereupon, at 4:01 p.m., the hearing was adjourned.)

10

11

12                   CERTIFICATE OF TRANSCRIBER

13

14      I, KAREN HARTMANN, a certified Electronic Court

15  Transcriber, certify that the foregoing is a correct transcript

16  from the electronic sound recording of the proceedings in the

17  above-entitled matter.

18

19  _____ /s/ *Karen Hartmann*_____

20  Karen Hartmann, AAERT CET 475   Date:  January 2, 2025

21  TRANSCRIPTS PLUS, INC.

22

23

24

25